**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ENVIRONMENTAL INTEGRITY PROJECT**<br>1000 Vermont Ave.  NW, Suite 1100<br>Washington, DC 20005, and<br><br>**CHESAPEAKE CLIMATE ACTION NETWORK**<br>6930 Carroll Ave, Suite 720<br>Takoma Park, MD 20912<br><br>*Plaintiffs,*<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**<br>1200 Pennsylvania Ave., NW<br>Washington, DC 20460<br><br>*Defendant.* | Civil Action No. 18-1952<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## STATEMENT OF THE CASE

1.      Plaintiffs Environmental Integrity Project (EIP) and Chesapeake Climate Action

Network (CCAN) ("Plaintiffs") file this complaint for declaratory and injunctive relief to remedy

violations of the Freedom of Information Act (FOIA or "Act"), 5 U.S.C. § 552, including the

failure of Defendant U.S. Environmental Protection Agency (EPA or "Defendant") to respond to

Plaintiffs' March 2, 2018 FOIA request (EPA-HQ-2018-005041) for records of former

Administrator Scott Pruitt and his accompanying staff's travel expenditures, as well as Plaintiff

EIP's March 27, 2018 FOIA request (EPA-HQ-2018-005878) for records of former Administrator

Gina McCarthy's travel expenditures and EPA communications with third parties regarding said

1

expenditures, and EIP's April 13, 2018 FOIA request (EPA-HQ-2018-006648) for email attachments potentially shared with third parties relating to 30 specific events on Mr. Pruitt's calendar, within 20 working days as mandated by the statute, and to produce the records improperly withheld by Defendant.

2.     Plaintiffs also seek an end to Defendant's FOIA policy or practice of "political awareness review," which results in the unlawful delay of the disclosure of public documents deemed "politically charged" or potentially embarrassing by the current Administration. Plaintiff EIP has numerous ongoing FOIA requests that have been affected by this policy, including the requests at issue in this Complaint.

3.     According to public records and statements from former and current EPA staff, EPA recently implemented FOIA policies or practices with the purpose of "intentionally delaying the release of documents under FOIA relating to [Pruitt's] tenure at EPA." *See* Letter from Ranking Member Elijah E. Cummings to EPA Administrator Scott Pruitt (June 11, 2018), Ex. A.

4.     The political "awareness review" process specifically requires FOIA staff to allow senior political appointees an opportunity to review and approve all FOIA responses processed by the EPA Office of the Administrator (AO), such as Plaintiffs' FOIA requests at issue here, prior to the release of any records. *Id.; see also* July 24, 2017 Email from Ryan Jackson Implementing the AO Centralization Project ("Jackson memo"), Ex. B.

5.     Although Mr. Pruitt has since resigned as EPA Administrator, it is unclear whether this impermissible policy or practice remains in place at EPA. A July 15, 2018 letter from EPA Principal Deputy General Counsel Kevin S. Minoli to the House Oversight Committee, in which Mr. Minoli defends the "awareness review" process generally (but without mentioning any of the details revealed by the internal emails discussed above), suggests that the policy remains in effect

2

and that EPA has no intention of ending this policy. *See* Letter from Kevin S. Minoli to Ranking Member Elijah E. Cummings (July 15, 2018), Ex. C, at 2.

6.      Under the D.C. Circuit's "policy-or-practice" doctrine first articulated in *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), a FOIA plaintiff is entitled to declaratory and injunctive relief if it can "plausibly demonstrate that: (1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA'; and (2) the plaintiff will 'suffer continuing injury due to this practice.'" *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (quoting *Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86, 91 (D.C. Cir. 1986)).

7.      EPA has implemented a policy or practice of political "awareness review" that constitutes an ongoing violation of FOIA.

8.      Plaintiffs are nonprofit, public interest organizations dedicated to the effective enforcement of environmental laws and accountability in government who regularly submit FOIA requests for records regarding the operations of EPA that have been adversely affected by this policy, including the FOIA requests at issue in this Complaint.

9.      EPA is likely to continue its impermissible policy or practice of using political "awareness review" to unreasonably delay the disclosure of non-exempt records, or withhold them entirely, absent the intervention of this Court.

10.      Thus, Plaintiffs respectfully request this Court to issue an Order: (1) declaring Defendant's failure to timely respond to Plaintiffs' FOIA requests and improper withholding of records to be unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)-(B); (2) requiring Defendant to immediately identify any records responsive to Plaintiffs' requests, and to provide such records promptly to Plaintiffs; and (3) if the Agency determines that the remaining records are exempt

from disclosure, order Defendant to make an appropriate determination and filing that provides the legal and factual basis justifying such exemptions as soon as reasonably possible.

11.     Plaintiffs also respectfully seek an Order from this Court (1) declaring that EPA's political "awareness review," implemented for the express purpose of improperly delaying or withholding nonexempt documents from FOIA requesters, is an improper policy or practice that clearly violates FOIA; (2) enjoining EPA from its unlawful policy or practice of requiring political "awareness review" as a means of unduly delaying disclosure for "politically charged" FOIA requests processed by EPA AO; and (3) assigning an independent observer, selected by this Court, to monitor EPA's FOIA compliance moving forward to ensure that EPA is implementing the ordered remedies in good faith.

## JURISDICTION

12.     This action arises under the citizen suit provision of the Freedom of Information Act.  5 U.S.C. § 552 (a)(4)(B).

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14.     This Court is a proper venue for all FOIA actions. 5 U.S.C. § 552(a)(4)(B); *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983).

15.     Furthermore, FOIA provides that this Court may issue a declaratory judgment, provide injunctive relief from withholding records and to order production of such records, and grant other equitable relief as the Court may deem just and proper. 5 U.S.C. § 552(a)(4)(B); *Payne Enterprises*, 837 F.2d at 494 ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms.") (citing *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 20 (1974) ("With the express vesting of equitable jurisdiction in the district court by § 552(a), there

is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court")).

16.     Because "[t]his circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief," *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1242 (D.C. Cir. 2017), "district courts have ample authority to award declaratory and prospective injunctive relief to FOIA requesters who successfully sustain policy-or-practice claims." *Muckrock, LLC v. Central Intelligence Agency*, No. 14-cv-997 (KBJ).

17.     This Court has jurisdiction to hear this claim because Plaintiffs have exhausted their administrative remedies, as a result of EPA's failure to provide any response to Plaintiffs within 20 working days of Plaintiffs' requests as required by law. 5 U.S.C. § 552(a)(6)(A)(i). Under FOIA, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request of the agency fails to comply with the applicable time limit provisions…" 5 U.S.C. § 552(a)(6)(C)(i).

18.     This Court may award attorney fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## PARTIES

19.     Plaintiff EIP is a nonpartisan, nonprofit organization founded in 2002 by former EPA enforcement attorneys to advocate for more effective enforcement of environmental laws. EIP's three main organizational objectives are: (1) to illustrate through objective facts and figures how the failure to enforce or implement environmental laws increases pollution and affects the public's health; (2) to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws; and (3) to help local

communities in key states obtain the protection of environmental laws.  Consistent with its mission, EIP regularly submits FOIA requests for records that may indicate how outside interests may be influencing EPA's implementation or interpretation of its statutory responsibility to protect health and the environment.

20.     Plaintiff CCAN is a grassroots, nonprofit organization dedicated exclusively to fighting the effects of global warming in the states of Maryland, Virginia, and Washington, DC. CCAN's main organizational objectives are to build and mobilize a powerful, diverse grassroots movement within the Chesapeake Bay region to call for state, national, and international policies that will put the region on the path to climate stability, to inspire action in neighboring states and regions nationwide, and to protect the most vulnerable communities in the region from the worst impacts of climate change.

21.     Defendant EPA is a government agency responsible for protecting human health and the environment. Defendant EPA has possession, custody, and control of the records which Plaintiffs seek and has implemented the impermissible policy of practice at issue in this matter. Defendant EPA is headquartered at 1200 Pennsylvania Avenue NW, Washington, DC 20460.

## LEGAL BACKGROUND

22.     FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dept. of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 89-813, at 3 (1965)). "Without doubt, timely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA," and Congress expressly understood that because "information is often useful only if it is timely… excessive delay by the agency in its response is often tantamount to denial." *Daily

*Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 13 (D.D.C. 2015) (quoting H.R. Rep. No. 93–876, at 6 (1974)). Accordingly, FOIA states that "[u]pon any determination by an agency to comply with a request for records, the records shall be made **promptly available** to such person making the request" 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added); *see also* 40 C.F.R. § 2.104(f) ("Once an office makes a determination to grant a request in whole or in part, it will release the records or parts of records…").

23.     FOIA requires that an agency "shall determine within 20 [working] days… after the receipt of any [FOIA] request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor; the right of such person to seek assistance from the FOIA Public Liaison of the agency; and in the case of adverse determination – the right of such person to appeal…[or] to seek dispute resolution services from the FOIA Public Liaison. . . ."  5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances" the time limits may be extended by written notice, within the statutorily provided response period, which must "set[] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552 (a)(6)(B)(i). This extension notice may not "specify a date that would result in an extension for more than ten working days" unless defendant invokes a narrow exception, wherein the agency reasonably asks the requester to narrow the scope of his or her inquiry.  *Id*.  Thus, the statute mandates that an agency shall respond with a determination no more than 30 working days after receiving a FOIA request.

24.     FOIA additionally provides that "[a]ny person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(6)(C)(i); *see also Citizens for*

*Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189–90 (D.C. Cir. 2013) ("To reiterate, if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court").

25.     The controlling precedent on policy or practice claims in the D.C. Circuit is *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). To state a viable claim for relief under *Payne*'s "policy-or-practice" doctrine, a plaintiff must "plausibly demonstrate that: (1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA'; and (2) the plaintiff will 'suffer continuing injury due to this practice.'" *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (quoting *Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86, 91 (D.C. Cir. 1986)).

## FACTUAL BACKGROUND

**March 2, 2018 FOIA Request (The "Travel Vouchers Request")**

26.     On March 2, 2018, Plaintiffs EIP and CCAN jointly submitted a FOIA request to Defendant EPA, via the federal government's FOIAonline website, seeking records of travel expenditures for all travel outside of Washington, DC by former Administrator Pruitt, as well as any and all EPA staff accompanying the Administrator, from August 18, 2017, to March 2, 2018 ("Travel Vouchers Request"). *See* March 2, 2017 FOIA Request and Confirmation, Ex. D.

27.     The Travel Vouchers Request noted that EPA had previously provided similar records of travel expenditures for Administrator Pruitt and accompanying staff from June 5 through June 12, 2017, in response to a prior FOIA request submitted by Plaintiff EIP. *See* Ex. D.

28.     The request attached those previously released records, and stated that requesters would accept disclosure of travel expenditures in a similar format as those earlier records. *See* Ex. D. The request also included an offer to clarify or limit the request further, if necessary. *Id.*

29.     EPA confirmed that it received the request on March 2, 2018, and assigned the request tracking number EPA-HQ-2018-005041. *Id.*

30.     On March 23, 2018, EIP attorney Sylvia Lam received an email from EPA attorney advisor Jonathan Newton which provided a link to 612 pages of records previously disclosed to the Washington Post in response to its May 26, 2017 FOIA request, as well as links to several databases and search engines not relevant to Plaintiffs' request. Email from Jonathan Newton, Attorney Advisor, EPA to Sylvia Lam, Attorney, EIP (March 23, 2018), Ex. E.

31.     Only 68 of the 612 pages provided were responsive to Plaintiffs' request. *See* April 10 & 18, 2018 Emails from Sylvia Lam to EPA employees Newton, Creech, and No, Ex. F.

32.     On April 10, 2018, Ms. Lam emailed Mr. Newton informing him of the above, and confirming that Plaintiffs had still not received either (1) records of travel expenditures for Administrator Pruitt from February 15 to March 2, 2018, or (2) records of travel expenditures for staff accompanying the Administrator from August 18, 2017 to March 2, 2018. Ms. Lam requested an estimated date by which EPA would provide the remainder of the responsive records, and once again offered to clarify the request if necessary. *Id.* EPA did not respond to this email.

33.     EIP attorneys followed up on Ms. Lam's April 10 email on April 18, April 25, and May 3, through both email and direct phone conversation with EPA attorney Christopher Creech. *Id.*; *see also* April 25 & May 3 Emails from Sanghyun Lee to Christopher Creech, Ex. G. On all three occasions, Mr. Creech informed EIP attorneys that EPA was in the process of reviewing the requested records to determine whether they were responsive to a Congressional request for similar

information, and that EPA expected that the records would be provided to Plaintiffs shortly after the production to Congress, but was not able to provide any time estimate for production. *Id.*

34.     On June 1, 2018, Ms. Lam received an email from EPA, which stated that based on an average processing time for FOIA requests processed by EPA's AO of 388 working days, the new estimated completion date for Plaintiffs' FOIA request was August 28, 2019. Email from Newton to Lam & Reply from Lee to Newton, Ex. H.

35.     This email made no reference to  EIP's repeated efforts to communicate with EPA regarding the outstanding records, or EPA's numerous statements that EPA expected to release the remainder of the records shortly after determining whether they would be produced in response to a Congressional request. *Id.* Instead, the email again directed EIP to a number of search engines and databases on EPA's website with no relation to the subject of Plaintiffs' request. *Id.*

36.     On June 5, 2018, EIP responded by email to dispute EPA's classification of this request as "complex," given that the request's scope was narrow, clearly defined, and for records routinely gathered and compiled in agency databases in the same format as records recently located and disclosed by EPA. *Id.* EPA did not respond to this email.

37.     As of the time of this filing, Plaintiffs have not received (1) records of travel expenditures for Mr. Pruitt from February 15 to March 2, 2018; (2) records of travel expenditures for staff accompanying Mr. Pruitt from August 18, 2017 to March 2, 2018; or (3) any determination from EPA as to whether and when it will respond to the remainder of Plaintiffs' request and its justifications therefor, or any other communications regarding their request.

38.     As of the time of this filing, EPA has also not addressed Plaintiffs' dispute over the classification of their request as "complex" or clarified its repeated contradictory statements on its

expected disclosure schedule, effectively requiring Plaintiffs to expend resources to prosecute this action in order to obtain disclosure of these responsive, non-exempt records in a timely fashion.

**March 27, 2018 FOIA Request (The "McCarthy Request")**

39.     On March 27, 2018, Plaintiff EIP submitted a FOIA request to EPA, via the federal government's FOIAonline website, seeking (1) all communications from January 1, 2018 to March 27, 2018 between EPA employees and any third party regarding travel expenditures by former EPA Administrators Lisa Jackson and/or Gina McCarthy, and (2) travel vouchers identifying the cost of airfare, lodging, and any other travel-related expenses for former EPA Administrator Gina McCarthy and any staff serving on her personal security detail (PSD) during her tenure as Administrator (July 18, 2013 through January 20, 2017) ("McCarthy Request"). *See* McCarthy Request and Confirmation, Ex. I.

40.     EPA confirmed that it received the request on March 27, 2018, and assigned the request tracking number EPA-HQ-2018-005878. *Id.*

41.     EPA did not respond to the request or seek an extension within the statutorily prescribed 20-day deadline, which was April 24, 2018. *See* 5 U.S.C. § 552(a)(6).

42.     On April 25, 2018, EIP senior attorney Adam Kron emailed EPA requesting an update as to whether and when EPA would respond, and offering to clarify the scope of the request if necessary. *See* April 25, 2018 Email exchange between Kron, Farren, and Reeder, Ex. J. EPA responded to Mr. Kron that "the Agency is focused on work on the backlog and/or the request is still in review. At this time, we cannot provide a date as to when the documents will be provided." *Id.*

43.     On May 3, 2018, Mr. Kron received an email from EPA FOIA official Chandra Kennedy entitled "Final Disposition," which stated that EIP's request "has been processed with the following final disposition: Partial grant/partial denial." *See* May 3-30, 2018 Email Exchange between Adam Kron, Chandra Kennedy, and Melissa Reeder, Ex. K.

44.     Ms. Kennedy's email did not state which records EPA had determined to release, which records (if any) EPA was withholding or its justifications therefor, or which portion of EIP's request EPA had been denied or EPA's justification therefor, and did not inform EIP of its right to appeal the partial denial, as FOIA requires. *Id.*; 5 U.S.C. § 552(a)(6)(A)(i).

45.     On May 4, 2018, through FOIAonline, EPA produced 241 pages of documents related to Administrator McCarthy's travel vouchers for the period of October 2014 to January 20, 2017. *Id.* At this time, EPA marked EIP's request as "closed." *Id.*

46.     On May 16, 2018, Melissa Reeder from EPA's Office of the Chief Financial Officer (OCFO) provided Mr. Kron with additional responsive records of Administrator McCarthy's travel prior to October 2014, which Mr. Kron requested because they had not been included in EPA's May 4 release. *Id.*

47.     Neither the May 4 nor May 16 releases included (1) any records of communications between EPA employees and third parties regarding travel expenditures by former EPA Administrators Lisa Jackson and/or Gina McCarthy, (2) any records of travel expenditures for Administrator McCarthy's PSD staff; or (3) any explanation or justification as to why the request was closed with no reference to the outstanding records requested. *Id.*; *see also* Ex. I.

48.     On five occasions between May 4 and May 30, Mr. Kron emailed Ms. Kennedy and Ms. Reeder requesting an explanation as to why EIP's request had been marked as "closed"

with no reference to the outstanding records of EPA's communications with third parties or records of travel expenses for Administrator McCarthy's PSD staff. Ex. K.

49.     On each of the five dates, Mr. Kron specifically requested that EPA clarify what portion of EIP's request was being denied and EPA's justification therefor, and whether the missing records were being withheld, and if so, EPA's justifications therefor. *Id.* EPA did not respond to or acknowledge any of these requests for clarification. *Id.*

50.     As of the date of this filing, Plaintiff EIP has not received (1) any records of communications from January 1, 2018 to March 27, 2018 between EPA employees and third parties regarding travel expenditures by former Administrators Jackson and/or McCarthy; (2) any records of travel expenses for members of Administrator McCarthy's PSD staff; or (3) any response clarifying whether these records are being withheld, justifying EPA's partial denial, or explaining why EPA has closed the request without acknowledging these outstanding records.

51.     EPA's repeated failure to provide either the responsive documents requested, or any explanation for the partial denial and closure of EIP's request in spite of the outstanding records, has effectively required Plaintiffs to expend resources to prosecute this action in order to obtain disclosure of these responsive, non-exempt records in a timely fashion.

## April 13, 2018 FOIA Request (The "Attachments Request")

52.     On March 30, 2018, EIP received records of Administrator Pruitt's calendar in response to an August 14 FOIA request submitted to EPA for all records of Administrator Pruitt's schedule of meetings with outside parties from May 19, 2017 to August 14, 2017. Thirty of these calendar entries indicated that they had included attachments that may have either been produced

or otherwise provided by outside parties, but which were not included in this disclosure. *See* April 13, 2018 Attachments Request and Confirmation, Ex. L.

53.     On April 13, 2018, Plaintiff submitted an additional FOIA request to EPA via the federal government's FOIAonline website, seeking: (1) any attachments that may have been provided by EPA to outside parties, including those records produced internally by EPA staff but then subsequently shared with outside parties, prior to meetings or events with Administrator Pruitt, from May 19, 2017, to August 21, 2017; and (2) any attachments that may have been produced or otherwise provided by outside parties to EPA prior to meetings with Administrator Pruitt, from May19, 2017, to August 21, 2017 ("Attachments Request"). 5 U.S.C. § 552; Ex. L.

54.     The Attachments Request attached all of the relevant excerpts of the calendar records in question. Ex. L. The request also included a table individually listing all 30 calendar entries included in the scope of the request, including date, time, subject, and page number on the excerpt, as well as the file names of all of the attachments sought associated with those calendar entries. *Id.* at 2-5. The request offered to clarify and limit the request further, if necessary. *Id.* at 6.

55.     EPA confirmed that it received the request on April 13, 2018, and assigned the request tracking number EPA-HQ-2018-006648. Ex. L at 8.

56.     On May 24, 2018, EIP Attorney Sanghyun Lee sent an email to EPA HQ's FOIA office requesting an update as to whether and when EPA would respond to Plaintiff's request, and offering to clarify the scope of the request if necessary. Email from Sanghyun Lee to EPA HQ, Ex. M. Mr. Lee did not receive a response to this email.

57.     On June 1, 2018, EPA informed EIP by email that based on an average processing time of 388 working days for "complex FOIA requests processed by AO… the new estimated

completion date for this FOIA is October 9, 2019." *Id*. June 1, 2018 Email from Nicole Rementer to Lee & June 5, 2018 Reply from Lee to Rementer and Newton, Ex. N.

58.     This email was identical to the one received by Ms. Lam, also on June 1, 2018, Ex. H, as well as nearly identical to the one previously received by Ms. Lam on March 23, Ex. E, in reference to the Travel Vouchers request. This email directed EIP to the same search engines and databases on EPA's website bearing no relation to the subject of Plaintiff's request. Ex. N.

59.     On June 5, 2018, Mr. Lee responded by email to dispute EPA's classification of EIP's narrowly defined request as "complex." In particular, Mr. Lee noted that EIP's request had not only precisely identified the records requested using their exact file names, but had in fact done the majority of EPA's work for EPA by including a table listing the calendar entries/emails to which the records had been attached, and where they could almost certainly be located, including all relevant details such as date, time, subject matter, and page number on the excerpts. *Id.*

60.     EPA did not respond to the June 5, 2018 email.

61.     As of the time of this filing, Plaintiff has not received any responsive records from EPA, any determination as to whether and when EPA will comply with EIP's FOIA request and produce the responsive records, or any response addressing EIP's dispute over the classification of its simple request as "complex," effectively requiring EIP to expend resources to prosecute this action in order to obtain disclosure of these responsive, non-exempt records in a timely fashion.

**EPA Has Implemented an Impermissible FOIA Policy or Practice**

62.     Internal documents demonstrate that EPA has recently implemented a new political "awareness review" policy or practice for FOIA requests processed by EPA AO. *See* Ex. B.

63.     These records state that this "awareness review" occurs after FOIA staff have processed records and reviewed them for redactions under FOIA's nine enumerated exemptions, and requires FOIA staff to allow senior political appointees an opportunity to review and approve all FOIA responses processed by the EPA AO prior to the release of any records. *Id.*

64.     Though internal emails show this policy was informally in place as early as June 6, 2017, *see* June 6, 2017 Email from Jonathan Newton to EPA FOIA Coordinators, Ex. O, the policy was formally implemented as a part of EPA's new "AO Centralization" project by EPA Chief of Staff Ryan Jackson in an email and memo distributed to EPA staff on July 24, 2017. Ex. B.

65.     While agency FOIA policies intended to make senior officials aware of impending productions are not necessarily new or improper *per se*, the "awareness review" policy implemented by EPA substantially diverges from acceptable FOIA practices by explicitly forbidding career staff from disclosing responsive records until a political staff member has reviewed and approved of the disclosure.

66.     The FOIA Expert Assistance Team (FEAT) was originally created in 2013 to "provide[] legal counsel on all issues pertaining to selected FOIA requests that have been determined to be [the] most complex and/or potentially sensitive requests received across the Agency." *See* Ex. C, at 1. Some notable major FEAT FOIAs include "requests related to the spill of polluted water from Gold King Mine, EPA's response to Volkswagen's use of defeat devices, and drinking water contamination in Flint, Michigan." *Id.* at 2.

67.     Under the current Administration, the FEAT team has been directed to take additional steps in its political awareness review that results in the delay or withholding of records that are "politically charged."

68.     The Jackson memo, for example clearly indicates that the political "awareness review" occurs after EPA's FEAT office and authorized senior officials have already reviewed the requests and determined that documents should be released. Ex. B. at 3-5.

69.     This is confirmed by an August 3, 2017 email from FEAT Director Becky Dolph, which states that per Mr. Jackson's orders, EPA staff were instructed that "no AO requests are to be issued without the opportunity for an awareness review." *See* Email from Becky Dolph to Ryan Jackson (August 3, 2017), Ex. P.

70.     Ms. Dolph's email was sent after a chain of emails from Elizabeth Bowman, former Associate Administrator for Public Affairs, and Mr. Jackson reprimanded career EPA FOIA staff for fulfilling a request from Kevin Bogardus of E&E news without their approval. *Id.* at 3.

71.     Within a week of this exchange, Acting Director of the Office of the Executive Secretariat (OEX) Brian T. Hope sent an email to EPA attorneys reemphasizing that Mr. Jackson had ordered "all AO FOIA releases reviewed by the FEAT team prior to distribution for awareness by the political team." *See* Email from Brian Hope to EPA Attorneys (August 8, 2017), Ex. Q. This email also noted that upon "conclusion of [FEAT's] review, they will forward the proposed release for the political team's awareness review." *Id.*

72.     According to Mr. Jackson's July 24 email, the AO Centralization Project was implemented to "enhance the Agency's ability to provide effective and efficient FOIA production." Ex. B at 2.

73.     However, the evidence suggests that the "awareness review" serves no legitimate purpose except to unlawfully delay, or in some cases prevent entirely, Plaintiffs' access to non-exempt public records in violation of FOIA's purpose of government transparency and statutory requirements.

74.     A June 11, 2018 letter from Representative Elijah E. Cummings, Ranking Member of the House Committee on Oversight and Government, for example, notes that empirical evidence from EPA's annual FOIA reports and independent sources indicate that the rate, quality, and efficiency of EPA AO's FOIA responses have in fact "slowed dramatically" since this policy was introduced. Ex. A at 5.

75.     EPA's FOIA reports, for example, show that EPA granted full requests at a lower rate, denied full requests at a higher rate, and rejected requests for not being "reasonably described" at four times the rate in Fiscal Year 2017 as compared to Fiscal Year 2016.[1] Ex. A at 5.

76.     A February 25, 2018 review of EPA's FOIA compliance in Fiscal Year 2017, conducted by the nonpartisan watchdog organization Project on Government Oversight, found that requests to EPA's AO accounted for 89% of these denials, at least some of which appeared to have little justification in law, and that the closure rate for FOIA requests processed by AO specifically from January 20, 2017 to December 29, 2017 was over 60% below the closure rate for **all** EPA FOIA requests during that same period. [2] Ex. A at 5.

77.     On July 13, 2018, Ranking Member Cummings submitted a letter to House Oversight Committee Chairman Trey Gowdy requesting a subpoena of EPA for records relating to its policy or practice of political "awareness review." *See* Subpoena Request from Ranking

---

[1] Environmental Protection Agency, EPA FOIA Annual Report for Fiscal Year 2017 (Mar. 2018) (online at www.epa.gov/sites/production/files/2018-03/documents/2017_foia_annual_report.pdf); Environmental Protection Agency, EPA FOIA Annual Report for Fiscal Year 2016 (Mar. 2017) (online at www.epa.gov/sites/production/files/2017-01/documents/2016_foia_annual_report.pdf).
[2] Project on Government Oversight, EPA Drags Its Feet with Records Requests Aimed at Scott Pruitt's Office (Feb. 25, 2017). Available at: http://www.pogo.org/blog/2018/02/epa-drags-its-feet-with-foia-records-requests-aimed-at-scott-pruitts-office.html

Member Cummings to Committee Chairman Gowdy (July 13, 2018), Ex. R. This request included excerpts from Mr. Jackson's transcribed interview with the Oversight Committee.

78.     In his interview, Mr. Jackson stated that the additional levels of review described above were applied to "FOIA requests… for documents that deal with individuals that work in the office of the Administrator[.]" *Id.* at 2.

79.     Mr. Jackson admitted that these additional levels of review also applied to requests flagged as "complex" or "politically charged" by political staff in EPA AO's public affairs office, including himself and Elizabeth B. White, Director of the Executive Secretariat. *Id.*

80.     When pressed to specify what characteristics would categorize a request as "politically charged," Mr. Jackson was unable to articulate any intelligible standard. *Id.* at 2-3.

81.     Mr. Jackson stated that the determination turned on whether he and other political staff at EPA public affair personally believed there was a good "reason" for the request, or if they believed it was "pretty much a fishing expedition." *Id.*

82.     Mr. Jackson stated that "FOIA is not meant to allow open ended requests," and that an agency is not required to respond to a FOIA request that has "no real… reason," is "just a fishing expedition," or is "simply submitted… to see what [the agency] will produce." *Id.* at 3.

83.     Mr. Jackson specifically cited the Sierra Club's request for external communications as an example of a "politically charged" request that, in his opinion, had "no real FOIA… reason" and was arguably "[not] even a proper request," despite also admitting that "[t]here is a huge legitimate public interest" in such communications. *Id.*

84.     Mr. Jackson, however, personally expedited a similar request for external communications, submitted the same month by Michael Formica, Assistant Vice President of the National Pork Producers Council. *Id.* at 6.

85.     Mr. Jackson instructed Deputy Chief of Staff Byron Brown "to be responsive to [Mr. Formica's] FOIA request." *See* June 30-July 11, 2017 Email Exchange between Jackson, Formica, and Brown, Ex. S.

86.     Afterwards, EPA assigned eight employees to meet with Mr. Formica in-person to help facilitate his request. *Id.*

87.     Mr. Jackson could not provide the Oversight Committee with any rational explanation for why he had decided to expedite Mr. Formica's request specifically. Ex. R at 6-8.

88.     Former EPA Deputy Chief of Staff Kevin Chmielewski has alleged that the political awareness review, among other policies or practices, was implemented for the express purpose of "intentionally delaying the release of documents under FOIA[.]" Ex. A at 1.

89.     Mr. Chmielewski has also alleged that, under the direction of Mr. Pruitt, he and Pruitt's political aides "met routinely in Pruitt's office to 'scrub,' alter or remove from Pruitt's official calendar numerous records because they might 'look bad.'"[3]

90.     A CNN review comparing Pruitt's public calendar with internal EPA schedules and emails found that over two dozen potentially controversial meetings, events, or calls had been completely omitted or altered on the calendar provided to the public. *Id.*

91.     This strongly corroborated Mr. Chmielewski's account. *Id.*

92.     It is unclear whether these alleged alterations were made as a part of the "awareness review," or whether FOIA requests for Mr. Pruitt's calendar were classified as "politically charged" requests.

---

[3] Scott Bronstein, Curt Devine, and Drew Griffin. "Whistleblower: EPA's Pruitt kept secret calendar to hide meetings." CNN. July 3, 2018.
https://www.cnn.com/2018/07/02/politics/scott-pruitt-whistleblower-secret-calendar/index.html

## FIRST CLAIM FOR RELIEF
### (Failure to Respond to Plaintiffs' FOIA Requests within Statutory Time Limits)

93.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

94.     Defendant's failure to timely respond to Plaintiffs' FOIA requests is a violation of the FOIA requirement that an agency "shall determine within 20 [working] days . . . after the receipt of any [FOIA] request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor . . . ." 5 U.S.C. § 552(a)(6)(A)(i). FOIA then requires that "each agency, upon any request for records…make the records promptly available…" 5 U.S.C. § 552(a)(3)(A).

## SECOND CLAIM FOR RELIEF
### (Agency Records Improperly Withheld)

95.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

96.     Defendant has improperly withheld responsive records requested by Plaintiffs which are possessed by EPA, readily accessible by the Agency, and not otherwise exempt under FOIA. In the case of the McCarthy Request, Defendant has not even offered any justification for its withholdings in spite of repeated requests for a disposition letter.

97.     Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

98.     Defendant's disregard of its duty to release the documents requested has harmed and will continue to harm Plaintiff until EPA is compelled to comply with FOIA.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF THE FREEDOM OF INFORMATION ACT**
**(EPA's Discretionary Political "Awareness Review" Unreasonably Delays FOIA Requests**
**and is an Impermissible Policy or Practice that Violates FOIA)**

99.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs.

100.     EPA has adopted and is engaged in a practice and/or policy of intentionally delaying the disclosure of non-exempt documents under its newly implemented political "awareness review" process, which bars EPA staff from disclosing responsive records until a political staff member has reviewed and approved of the disclosure.

101.     This policy was formally implemented by EPA Chief of Staff Ryan Jackson in an email and memo distributed to EPA staff on July 24, 2017, describing the specifics of the program. *See* Ex. B.

102.     Mr. Jackson's memo, as well as other internal emails, clearly indicate that this "awareness review" by political staff occurs *after* career FOIA officials, the FEAT Team, and authorized senior officials of EPA offices have all already reviewed requests and determined documents should be released. Ex. B; Ex. O; Ex. P; Ex. Q.

103.     While the Jackson memo states that the purpose of this political awareness review is to centralize FOIA processing in AO to increase efficiency, data from independent sources as well as EPA's own reporting indicates that the rate, quality, and efficiency of EPA AO's FOIA responses has in fact decreased on almost every measurable metric since this policy was introduced. Ex. A at 5.

104.     EPA's political "awareness review" policy serves no legitimate purpose except to unlawfully delay Plaintiffs' access to non-exempt public records in violation of FOIA's purpose

of government transparency and statutory requirements. This impermissible policy has impaired, and will continue to impair Plaintiffs' lawful access to non-exempt information in the future.

105.    EPA's repeated failures to abide by the terms of FOIA are not attributable to an unpredictable increase in FOIA requests, or any other causes of delay.

106.    EPA's impermissible policy or practice of warrants declaratory and injunctive relief under *Payne Enterprises*, 837 F.2d at 494; *see also Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229-31 (D.D.C. 2011).

107.    EPA is likely to continue its impermissible policy or practice of using political review as a tactic to unreasonably delay the disclosure of non-exempt records, in violation of FOIA's mandate, absent the intervention of this Court.

108.    FOIA imposes no limits on courts' equitable powers in enforcing its terms, and this Court should exercise its equitable powers to compel EPA to comply with the clear requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

109.    Declare Defendant's failure to timely respond to Plaintiffs' FOIA requests and improper withholding of records to be unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)-(B);

110.    Order Defendant to immediately identify any records responsive to Plaintiffs' requests, and to provide such records promptly to Plaintiffs;

111.    Order Defendant to respond to Plaintiffs' FOIA requests, and to provide Plaintiffs with all other responsive records identified in Plaintiffs' FOIA requests as soon as reasonably possible. In the alternative, if the Agency determines that all or some of the remaining records are

exempt from disclosure, order Defendant to make an appropriate determination and filing that provides the legal and factual basis justifying such exemptions as soon as reasonably possible;

112.    Declare that Defendant's policy or practice of using political "awareness review" for the impermissible purpose of delaying disclosure of non-exempt, "politically charged" records is a clear violation of FOIA;

113.    Enjoin Defendant from its continued use of this unlawful policy or practice;

114.    Assign an independent observer to monitor EPA's FOIA compliance to ensure that EPA is implementing the ordered remedies in good faith;

115.    Retain jurisdiction to ensure compliance with this Court's decree;

116.    Award Plaintiff its costs of this action, including reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

117.    Grant such other relief as this Court may deem just and proper.

Respectfully submitted this 21st day of August, 2018,

*/s/ Sylvia Lam*
SYLVIA LAM (D.C. Bar No. 1049147)
Environmental Integrity Project
1000 Vermont Ave. NW, Suite 1100
Washington, DC 20005
Phone: (202) 888-2701
Fax: (202) 296-8822
slam@environmentalintegrity.org

*Counsel for Plaintiffs*